UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**PETER JAMES WILLIAMS AND**           **CIVIL ACTION**
**ALFREDA RODNEY WILLIAMS**

                                                                                 **NO. 24-225-BAJ-SDJ**

**VERSUS**

**UNITED STATES OF AMERICA,**
**ET AL.**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have **14 days** after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within **14 days** after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on February 28, 2025.

                                                    _____
                                                    **SCOTT D. JOHNSON**
                                                    **UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**PETER JAMES WILLIAMS AND**　　　　　　　　**CIVIL ACTION**
**ALFREDA RODNEY WILLIAMS**

**NO. 24-225-BAJ-SDJ**

**VERSUS**

**UNITED STATES OF AMERICA,**
**ET AL.**

---

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are three motions to dismiss filed by Guaranty Bank & Trust Company (R. Doc. 21), First Guaranty Bank (R. Doc. 29), and the United States on behalf of its agency and representatives (R. Doc. 33). For the reasons discussed below, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss (R. Docs. 21, 29, and 33) be **GRANTED** and Plaintiffs' claims **DISMISSED WITH PREJUDICE**.

**I.    PROCEDURAL POSTURE**

This action was filed in this Court on March 20, 2024, by Plaintiffs Peter James Williams and his wife Alfreda Rodney Williams, naming as Defendants the United States of America (President Joe Biden and Vice President Kamala Harris), the United States Department of Agriculture (Secretary Thomas Vilsack and Deputy Secretary Xochitl Torres Small), Guaranty Bank and Trust Company, and First Guaranty Bank. (R. Doc. 1). The Complaint asserts federal jurisdiction by means of the Federal Tort Claims Act. (R. Doc. 1 ¶ 2). Plaintiffs assert that they filed this suit in federal court, seeking relief from a decision of the USDA Office of the Assistant Secretary for Civil Rights, having first presented their claim to the appropriate agency prior to filing with this Court, as required by § 2675 of the FTCA. (R. Doc. 1 ¶¶ 6-10).

On May 1, 2024, Guaranty Bank & Trust filed a timely Motion to Dismiss (R. Doc. 21); Plaintiffs objected (R. Docs. 22-24), GB&T filed a reply (R. Doc. 31), and Plaintiffs filed a surreply (R. Doc. 32). On May 14, 2024, First Guaranty Bank filed a timely Motion to Dismiss (R. Doc. 29); Plaintiffs objected (R. Doc. 30). On June 10, 2024, the United States filed a timely Motion to Dismiss (R. Doc. 33); Plaintiffs filed an objection (R. Doc. 41) and separate memorandum in support (R. Doc. 42), the United States filed a Reply (R. Doc. 44), and Plaintiffs filed a surreply (R. Doc. 45). All Defendants seek to dismiss Plaintiffs' claims on the basis of Federal Rule of Civil Procedure 12(b)(6) for Plaintiffs' failure to state a claim on which relief can be granted.

## II.    PLAINTIFFS' CLAIMS

### A.    BACKGROUND

Plaintiffs' Complaint and Defendants' Memoranda describe a long history of events leading to this lawsuit—including some previous suits in both state and federal court. Plaintiffs took out loans with Guaranty Bank & Trust in 2000 and 2002; Plaintiffs having defaulted on those loans, GB&T foreclosed on their property in 2004, and a foreclosure sale happened in 2011. (R. Doc. 21-1 at 2). After the initial foreclosure, Plaintiffs filed several bankruptcy petitions between 2004 and 2011. (R. Doc. 21-1 at 2). Plaintiffs filed a lawsuit in 2010 for alleged wrongful foreclosure, naming among defendants GB&T and the USDA. (R. Doc. 21-1 at 3). Plaintiffs filed similar lawsuits in 2011 and 2013. (R. Doc. 21-1 at 3).

In 2020, Plaintiffs requested a Guaranteed Farm Loan from First Guaranty Bank; but the Farm Service Agency informed Plaintiffs in April 2021 that they were ineligible for guaranteed or direct loan assistance because of a loss claim incurred in 2010. (R. Doc. 33-1 at 2). Plaintiffs filed a program discrimination complaint with the USDA Office of the Assistant Secretary for Civil

Rights ("OASCR") on May 11, 2021. (R. Doc. 33-1 at 2). OASCR investigated Plaintiffs' claims and issued a final decision on March 3, 2022, finding that Plaintiffs had not met their burden to prove discrimination on the basis of race and retaliation. (R. Doc. 33-1 at 3).

Plaintiffs filed the instant Complaint on March 20, 2024, citing claims arising out of (1) the loan and subsequent foreclosure involving Guaranty Bank & Trust, (2) the loan application denied by First Guaranty Bank,[1] and (3) OASCR's investigation and denial of Plaintiffs' discrimination claim.

### B.   CLAIMS AGAINST GUARANTY BANK & TRUST

Plaintiffs claim Guaranty Bank & Trust submitted false financial records to the USDA and other federal institutions at the time of the foreclosure and sale of Plaintiffs' property in 2007, in violation of the Federal False Claims Act (31 U.S.C. 3729). (R. Doc. 1 ¶ 48). As a result, Plaintiffs claim the foreclosure was based on false information and thus wrongful. (R. Doc. 1 ¶ 50).

Plaintiffs contend that they were victims of illegal dual-tracking with regard to their foreclosure, alleging that GB&T initiated foreclosure on their property without first offering Plaintiffs an opportunity to complete a loan modification application. (R. Doc. 1 ¶¶ 52-57). Plaintiffs allege that, in October 2007, they made an alternative agreement to avoid foreclosure sale of their property; they provide a list of mortgage payments from 2005 to 2008, including extra payments per the alternative agreement.[2] (R. Doc. 1 ¶¶ 59-70). Plaintiffs allege that GB&T refused to accept the final payment—$3000, after their having paid over $163,000 in 2008—and so Plaintiffs assert claims of breach of contract. (R. Doc. 1 ¶¶ 71-72).

---

[1] Per the United States, this was not a formal decision on a submitted application, but rather an informational notice of Plaintiffs' ineligibility.

[2] These are lists typed out by Plaintiffs in their Complaint, not financial documents.

Plaintiffs assert violations of the Truth in Lending Act (15 U.S.C. §§ 1601-1667), contending that GB&T and the USDA failed to make disclosures concerning financial transactions and that GB&T made changes to the terms of loans without Plaintiffs' knowledge or consent. (R. Doc. 1 ¶¶ 77-83). Plaintiffs further allege that GB&T colluded with the USDA to backdate records and establish a fraudulent loss claim against Plaintiffs. (R. Doc. 1 ¶ 86). Finally, Plaintiffs allege that the trustee appointed to Plaintiffs' bankruptcy case allowed GB&T's actions to go unchecked.[3] (R. Doc. 1 ¶¶ 97-126).

For the actions described above, Plaintiffs claim that GB&T has violated the Federal False Claims Act, Truth in Lending Act, and both federal and state tort law. Plaintiffs contend that GB&T is liable for damages including but not limited to financial damages, loss of property and business development, loss of credit, mental anguish and emotional distress, all amounting to one hundred twenty-five million dollars ($125,000,000). (R. Doc. 1 ¶ 146).

### C.  CLAIMS AGAINST FIRST GUARANTY BANK

Plaintiffs assert negligence claims against First Guaranty Bank for failure to process a loan application. (R. Doc. 1 ¶¶ 150-53). On August 31, 2020, Plaintiffs requested a Guaranteed Farm Loan from FGB. (R. Doc. 1 ¶ 155). Plaintiffs authorized the USDA Farm Service Agency ("FSA") to release their loan history to FGB as part of the loan application. (R. Doc. 1 ¶ 159). Plaintiffs assert that the FSA's report of Plaintiffs' loan history confused First Guaranty Bank and Guaranty Bank & Trust, causing the reports to be wholly incorrect and to negatively impact Plaintiffs' loan application. (R. Doc. 1 ¶¶ 163-64). In March 2021, FGB inquired into the eligibility requirements for a Guaranteed Farm Loan for applicants who previously had FSA debt forgiven. (R. Doc. 1 ¶

---

[3] Plaintiffs explain in detail their relationship with the bankruptcy trustee, bankruptcy process, liquidation, and Final Estate Report prepared in 2015. Those details are not expounded on here because the trustee is not named as a defendant in this action, and the bankruptcy proceedings are ancillary to the claims asserted here.

165). The FSA responded that applicants must not have previously caused the government a loss or have previous debt forgiveness. (R. Doc. 1 ¶ 167). Plaintiffs assert that First Guaranty Bank failed to timely process their Guaranteed Loan Application, having relied on false and outdated information from FSA regarding Plaintiffs' loan history. (R. Doc. 1 ¶¶ 171-72). Plaintiffs argue that, regardless of eligibility criteria, FGB should have submitted their application and failure to do so was a breach of duty. (R. Doc. 1 ¶¶ 168, 178). Plaintiffs allege that this breach was the direct cause of Plaintiffs' losses. (R. Doc. 1 ¶ 181).

Plaintiffs assert claims against FGB under the Federal Tort Claims Act (28 U.S.C. 1346(b)) and Louisiana tort negligence.[4] (R. Doc. 1 ¶¶ 149-52). Plaintiffs contend that FGB was negligent and is liable for financial damages, loss of property and business development, loss of credit, and mental anguish. (R. Doc. 1 ¶ 184). Plaintiffs seek compensatory damages in the amount of twenty-five million dollars ($25,000,000). (R. Doc. 1 ¶ 186).

### D. CLAIMS AGAINST THE UNITED STATES DEFENDANTS

Plaintiffs filed an administrative claim with the USDA Office of the Assistant Secretary for Civil Rights on May 11, 2021, citing the facts above and alleging discrimination in the administration of FSA loans.[5] (R. Doc. 1 ¶¶ 7, 19). On September 8, 2021, Plaintiffs received a response letter from OASCR denying their claim.[6] (R. Doc. 1 ¶ 8). Plaintiffs claim the investigative process leading to the denial letter is flawed, with investigators glossing over extensive evidence

---

[4] Plaintiffs cite two Louisiana statutes: **La. C.C. Art. 2004** nullifies any contract clause that limits liability of one party for intentional or gross fault causing damage to the other party, or any clause that in advance limits liability of one party for causing physical injury to the other. That is to say, a party is liable for gross negligence even when an indemnity clause is in play. **La. C.C. Art. 2316** is a general negligence statute: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

[5] Plaintiffs have not provided the Court with this claim, so references to its contents are based on descriptions in the briefings in this case.

[6] Per the United States, September 8, 2021, was the date the initial investigation report was released. The final written decision was first issued on March 3, 2022. (R. Doc. 33-1 at 3).

and failing to act on Plaintiffs' claims of civil rights violations. (R. Doc. 1 ¶¶ 12-15). Accordingly, Plaintiffs assert negligence claims against OASCR. (R. Doc. 1 ¶ 16).

In addition to the 2021 claim, Plaintiffs cite two other claims in 2010 and 2012, in which they allege OASCR intentionally delayed and failed to conduct a thorough review of the evidence. (R. Doc. 1 ¶¶ 19-21). Plaintiffs contend that OASCR failed to adequately review all documents pertaining to their claims, including information regarding people involved, sequence of events, and duration of violations. (R. Doc. 1 ¶¶ 33-39). As such, Plaintiffs claim OASCR violated Plaintiffs' due process right to a fair, reasonable, and timely resolution of their complaints. (R. Doc. 1 ¶¶ 27-30). Plaintiffs assert claims of financial damage and intentional infliction of emotional distress. (R. Doc. 1 ¶ 31).

Finally, Plaintiffs allege that the OASCR's investigation was deficient in order to protect the US President and Vice President, and USDA leadership. (R. Doc. 1 ¶ 41). Plaintiffs cite the Federal Tort Claims Act (28 U.S.C. § 1346), contending that the United States Defendants are liable for damages including but not limited to financial loss, loss of property, credit and business losses, and emotional damages, amounting to one hundred twenty-five million dollars ($125,000,000). (R. Doc. 1 ¶¶ 45-46).

### III. MOTIONS TO DISMISS

#### A. LEGAL STANDARD

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief – including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Culliver v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002), *Kansa Reinsurance v. Congressional Mortg. Corp.*, 20 F.3d 1362, 1366–70 (5th Cir.1994) (dismissing, under Rule 12(b)(6), a claim as time barred where the claim was clearly filed after the applicable statute of limitations had run and where it was evident from the pleadings that the plaintiff was not entitled to the benefit of the discovery rule)). Therefore, dismissal is appropriate if Plaintiffs' claims are clearly time barred.

### B. GUARANTY BANK & TRUST

#### 1. Arguments of the Parties

Guaranty Bank & Trust characterizes the instant Complaint as Plaintiffs' fourth lawsuit in 14 years regarding the same set of facts as to GB&T. (R. Doc. 21-1 at 1-2). Per GB&T, Plaintiffs were approved for several loans with GB&T in 2000 and 2002; but Plaintiffs failed to make payments on those loans, and GB&T foreclosed on their property in 2004, with the final foreclosure sale in 2011. (R. Doc. 21-1 at 2). GB&T outlines the history of litigation on these issues, including a 2010 action in this Court, and two separate state court actions in 2011 and 2013, all alleging the same wrongful foreclosure alleged in the instant Complaint. (R. Doc. 21-1 at 3). The 2010 action was dismissed on jurisdictional grounds, and the state court actions were dismissed with prejudice as part of a compromise in the Plaintiffs' bankruptcy proceedings. (R.

Doc. 21-1 at 3). GB&T argues that Plaintiffs' claims are time-barred, precluded by res judicata, and that they lack support to show a plausible claim against GB&T. (R. Doc. 21-1 at 4).

Plaintiffs oppose the Motion to Dismiss, arguing that the previous lawsuits did not resolve the issues raised. (*See, e.g.,* R. Doc. 22 ¶ 4). Plaintiffs state that the "unfairness of the handling of the claims within the 18th judicial court system[7] [] prompted Plaintiff to seek justice in the Middle District". (R. Doc. 22 ¶ 6). Plaintiffs argue that "[r]es judicata does not restart the appeals process, which is considered a linear extension of the same lawsuit". (R. Doc. 22 ¶ 18). Plaintiffs raise for the first time in their Opposition that they were deprived of appeals rights in their 2013 case in the 18th Judicial District Court. (R. Doc. 22 ¶ 20). Plaintiffs assert that their claims are not time-barred because contracts, monetary judgments, and unjust enrichment have a 10-year statute of limitations. (R. Doc. 22 ¶ 38).

### 2. Analysis

Despite Plaintiffs' assertions that res judicata does not apply in the appeals process and that previous lawsuits were mishandled, **the instant case is not an appeal** of previous decisions but rather a new action entirely. While the facts are largely the same across Plaintiffs' several lawsuits, this case is not procedurally related to the previous ones, and so the Court must treat these claims as new ones—that is, this Court is not making any determinations regarding other courts' previous rulings. In their opposition, Plaintiffs claim they were denied the right to appeal a 2013 ruling in state court, but this issue was not raised in the Complaint and so is not properly before this Court.

Plaintiffs assert that their claims are not time-barred, citing 10-year statutes of limitations on certain actions—but the Court must note that the current filing, initiated in 2024, comes 11 years after the 2013 ruling, and even longer after the alleged conduct by Guaranty Bank & Trust.

---

[7] 18th Judicial District Court of the State of Louisiana.

And regardless, Plaintiffs' current claims do not fall under those asserted 10-year statutes of limitations, as addressed below. Plaintiffs further assert that a statute of limitations may be suspended if a case must be re-filed for technical reasons; but here, Plaintiffs have not re-filed for technical reasons, and this filing comes over 10 years after the previous judgment.[8] As to Guaranty Bank & Trust, Plaintiffs do not assert any new facts or continuing harm to justify a reset statute of limitations; in fact, Plaintiffs assert that the evidence provided in this case "has always been listed in prior claims of 2010, 2011, [and] 2013, but deliberately disregarded by [the courts]". (R. Doc. 22 ¶ 70). And so, the applicable statutes of limitations are those in the statutes cited in Plaintiffs' claims: (1) False Claims Act, (2) Truth in Lending Act, (3) Federal Tort Claims Act, and (4) state law tort for breach of contract; there are no mitigating factors altering the statutory limitations.

The False Claims Act's procedures dictate that a claim under the Act *may not be brought* more than 6 years after the violation, or more than 3 years after the relevant facts become known to the US official whose duty it is to act—but no more than 10 years after the violation. 31 U.S. §3731. In their Complaint, Plaintiffs assert facts implicating GB&T in 2007, 2008, and 2011. (*See* R. Doc. 1 ¶¶ 59, 70-71, 107). The latest any claims under the Act could be brought on the facts alleged is 2021—10 years after the last alleged action by GB&T. Plaintiffs filed the instant Complaint on March 20, 2024, and so any claims under the False Claims Act had prescribed and **should be dismissed**.

The Truth in Lending Act entails a one-year statute of limitations from the time of the violation, except for claims related to certain mortgage disclosures, which are limited to a period of three years after the violation. *See* 15 U.S. §1640(e). Even assuming the latest date mentioned in the claims against GB&T, and assuming the claims relate to specific mortgage disclosures

---

[8] While Plaintiffs may be re-asserting claims that have already been litigated, they also raise new claims, namely those regarding OASCR's denial of Plaintiffs' administrative claim. Therefore, this is not merely a procedural re-filing.

enumerated in 15 U.S. §1640(e), the latest date for bringing such claims would be 2014—three years after the last alleged action by GB&T. And so, because Plaintiffs' claims were brought in 2024, those claims were prescribed at the time the Complaint was filed and **should be dismissed**.

For claims brought under Louisiana state tort law, for violations occurring before July 1, 2024, there is a prescriptive period of one year after the violation. *See Sibley v. Touro LCMC Health*, 2024 WL 5118489, at *4 n.5 (5th Cir. Dec. 16, 2024) (explaining that the one-year prescriptive period was replaced with a two-year period, applying only prospectively to actions arising after July 1, 2024). Here, any tort claims related to the events described in the Complaint with respect to GB&T would have prescribed by 2012—one year after the last alleged action by GB&T. And so, any claims in Louisiana tort law were prescribed at the time the Complaint was filed and **should be dismissed**.

Finally, "[t]he United States is the only proper defendant in an FTCA claim." *Ramirez v. United States*, 410 F. Supp. 3d 824, 832 (S.D. Tex. 2019). Therefore, Plaintiffs' FTCA claims against GB&T, a private entity, are improper and **should be dismissed**. These claims being dismissed as time-barred, there are no remaining claims against Defendant Guaranty Bank & Trust.

    C.    **FIRST GUARANTY BANK**

        1.    **Arguments of the Parties**

First Guaranty Bank characterizes Plaintiffs' Complaint as a claim of wrongful foreclosure "stemming from acts that occurred over twenty years ago," with FGB allegedly contributing to that foreclosure and its fallout by failing to timely process a Guaranteed Loan Application requested in 2020. (R. Doc. 29-1 at 1-2). Plaintiffs' claims against FGB arise from the Federal Tort Claims Act and Louisiana negligence laws. (R. Doc. 1 ¶¶ 150-52). FGB seeks to dismiss all claims against it, arguing that both state and federal claims are time-barred, that the FTCA does not apply

to FGB—a private entity, and that all claims lack sufficient support per Federal Rule 12(b)(6). (R. Doc. 29-1 at 1-2).

Plaintiffs oppose the Motion to Dismiss, first clarifying that their claims against First Guaranty Bank do not include claims for "wrongful foreclosure," but rather stem from FGB's use of "erroneous, false, and outdated data" to process Plaintiffs' loan application initiated in August 2020 and FGB's ultimate failure to submit Plaintiffs' loan application. (R. Doc. 30 ¶¶ 3, 7-8; 20-26). Plaintiffs argue that these claims are not time-barred because of ongoing communications with FGB, the last of which was on January 12, 2024. (R. Doc. 30 ¶¶ 9-10). Plaintiffs further argue that, as a certified lender for the USDA Farm Loan Program, FGB is an agent of the United States and a proper defendant to claims under the Federal Tort Claim Act. (R. Doc. 30 ¶¶ 31-34).

**2.   Analysis**

As to the federal claim, FGB argues that the Federal Tort Claims Act does not apply to FGB, a private banking institution, while Plaintiffs contend that the FTCA applies to agents of the United States acting in their official capacity. "[T]he FTCA provides that the United States is the proper defendant in an FTCA action based on the acts of 'any employee of the Government ... acting within the scope of his office or employment.'" *Al-Dahir v. F.B.I.*, 454 F. App'x 238, 242 (5th Cir. 2011) (citing 28 U.S.C. § 2679(b)(1); *McLaurin v. United States*, 392 F.3d 774, 777 (5th Cir.2004)). Even if FGB were acting in an official capacity as an agent of the United States when administering USDA Farm Loans, FGB itself would not be a proper defendant; rather, "[t]he United States is the only proper defendant in an FTCA claim." *Ramirez*, 410 F. Supp. 3d. Therefore, an FTCA claim against FGB, a private entity, is improper and **should be dismissed**.

As to the Louisiana state negligence claims, FGB argues that any tort claims are time-barred. For torts occurring before July 1, 2024, there is a one-year prescriptive period. *See supra,*

*Sibley* 2024 WL 5118489. Here, Plaintiffs assert that they began trying to apply for a Guaranteed Home Loan through FGB on August 31, 2020, with an inquiry into Plaintiffs' eligibility on March 9, 2021. (R. Doc. 1 ¶¶ 155, 165). Plaintiffs presented their discrimination claim to OASCR, predicated on these events, on May 11, 2021—so all relevant events pertaining to FGB must have happened prior to that date. Plaintiffs argue that subsequent communication with FGB means the statute of limitations has not begun to run; but their Complaint clearly shows the alleged tort was contained within the loan application process. Even assuming the latest possible date, Plaintiffs' claims would have prescribed one year later, on May 11, 2022.[9] Plaintiffs filed their Complaint on March 20, 2024, almost two years after the latest possible date of prescription. Any tort claim against FGB for the events alleged in the Complaint had prescribed at the time Plaintiffs filed their Complaint, and so those claims **should be dismissed**.

### D.   UNITED STATES DEFENDANTS

#### 1.   Arguments of the Parties

The United States on behalf of the USDA addresses Plaintiffs' claim that OASCR failed to properly investigate Plaintiffs' claims of discriminatory practices following the agency's determination that Plaintiffs were ineligible for an FSA loan. (R. Doc. 33-1 at 2). Per the United States, Plaintiffs requested a Guaranteed Farm Loan from First Guaranty Bank in 2020; on April 28, 2021, the Farm Service Agency notified Plaintiffs by e-mail that they were not eligible to receive FSA loans because the FSA paid a loss claim on Plaintiffs' behalf in 2010. (R. Doc. 33-1 at 2). The United States notes that this e-mail was not a formal decision on a loan application, but instead merely a notice that Plaintiffs were not eligible for such a loan. (R. Doc. 33-1 at 2).

---

[9] The Court makes no determination as to the specific date on which the alleged tort occurred, but instead assumes the latest possible date—the date most favorable to Plaintiffs.

Plaintiffs filed a program discrimination complaint with the USDA OASCR on May 11, 2021, initiating an agency investigation. (R. Doc. 33-1 at 2). OASCR issued a report of its investigation on September 8, 2021, and a Final Agency Decision on March 3, 2022. (R. Doc. 33-1 at 3). The Final Agency Decision found that Plaintiffs had not proven their discrimination claim, and it was sent to Plaintiffs by e-mail on March 4, 2022, again on September 12, 2023, and by certified mail on September 16, 2023. (R. Doc. 33-1 at 3).

The United States argues that Plaintiffs failed to properly exhaust their administrative remedies because the current Complaint raises claims that were not first presented to the agency. (R. Doc. 33-1 at 6). Plaintiffs submitted a *discrimination* claim to OASCR, and OASCR's investigation and decision on that claim are the subject of the instant *negligence* claim. That is, Plaintiffs have not presented their discrimination claim to this Court after having been denied by the agency; instead, they brought a new tort claim before this Court without having first presented the tort claim to the agency as required by the FTCA. (R. Doc. 33-1 at 7-8).

The United States further argues that, even if the Court finds that Plaintiffs have exhausted their administrative remedies and properly presented their claims, this suit was nevertheless brought after the requisite six-month period for doing so following the Final Agency Decision, meaning that any claims presented here are time-barred. (R. Doc. 33-1 at 9-10). The Final Agency Decision was first e-mailed to Plaintiffs on March 4, 2022, and delivered by certified mail on September 16, 2023, and so the United States argues that the latest possible date for filing the instant Complaint was March 18, 2024 (six months after the denial). (R. Doc. 33-1 at 11).

Plaintiffs oppose the Motion to Dismiss, first clarifying that the instant suit does not involve wrongful foreclosure or discrimination, but rather fraudulent misrepresentation, administrative errors and omissions, negligence, and flawed investigation and policy oversight. (R. Doc. 42 ¶¶ 3-

5). Plaintiffs state that these administrative errors caused Plaintiffs to be ineligible for FSA loans for twenty years, "most recently in 2021, when the negligent actions disqualified them for FSA farm loan assistance." (R. Doc. 42 ¶ 56). However, Plaintiffs also argue that their claims are not time-barred because the tort was not a single inciting event, but rather a continuing wrong from 2014 through 2024.[10] (R. Doc. 42 ¶¶ 29-32).

Plaintiffs interpret the six-month time period to file with federal court as such: "[c]laimants must give the government agency *at least* six (6) months to investigate before filing suit in Federal Court". (R. Doc. 42 ¶ 34). Plaintiffs further argue that all claims brought in the instant Complaint are "within the (2) year prescribed period for all FTCA claims". (R. Doc. 42 ¶ 109). And "Plaintiffs must present their Tort claim in writing to the appropriate federal agency within two (2) years after such claims accrue. Therefore, the six (6) month argument is not an adequate defense." (R. Doc. 42 ¶ 134). Plaintiffs assert their claims could be brought until September 16, 2025, two years after the Final Agency Decision was delivered by certified mail. (R. Doc. 42 ¶ 145).

In reply, the United States notes that Plaintiffs' only claims against the United States are tort claims under the FTCA. (R. Doc. 44 at 1). The United States re-asserts the argument that Plaintiffs have not exhausted their administrative remedies as to the cited torts but have only presented a discrimination claim to OASCR. (R. Doc. 44 at 1-3).

    2.    **Analysis**

As to the USDA OASCR and the individual federal officer Defendants, Plaintiffs assert claims under the Federal Tort Claims Act. (R. Doc. 1 at ¶ 44-45). As a preliminary matter, as addressed above, the United States is the only proper defendant of an FTCA claim. *Ramirez*, 410 F. Supp. 3d at 832. The FTCA "grants federal employees absolute immunity from common law

---

[10] As the claims against the United States concern the 2021 loan eligibility and subsequent agency complaints, the Court is unsure what continuing wrongs are attributed here to the United States from 2014-2020.

tort actions by providing for the substitution of the United States as the sole defendant in such actions". *Dardar v. Potter*, 2004 WL 422008, at *6 (E.D. La. Mar. 4, 2004). And so, Plaintiffs' claims against individual federal officers and the USDA **should be dismissed**. *Id.* The Court will continue analysis assuming the United States as the sole Defendant of the FTCA claims against the federal officers and agency.

The exhaustion provision of the FTCA provides that "a plaintiff may bring a claim under the FTCA only when: (1) the agency has denied the claim in a writing sent to the claimant by certified or registered mail, or (2) the claim is deemed denied by the passage of six months from its filing date without disposition." *Gibbs v. Miner*, 2010 WL 1711703, at *1 (N.D. Tex. Apr. 2, 2010) (citing 28 U.S.C. § 2675(a)); *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995). This section of the FTCA "require[s] complete exhaustion of Executive remedies before invocation of the judicial process." *See McNeil v. United States*, 508 U.S. 106, 112 (1993). The Fifth Circuit requires refiling to cure the subject matter jurisdiction problem. *See McNeil v. United States*, 964 F.2d 647, 648 (5th Cir. 1992); *United States v. Burzynski*, 819 F.2d 1301, 1306–07 (5th Cir. 1987); *Reynolds v. United States*, 748 F.2d 291, 292–93 (5th Cir. 1984).

Here, Plaintiffs filed a claim with OASCR on May 11, 2021, citing discrimination on the basis of race and gender in the administration of farm loans.[11] (R. Doc. 1 at ¶¶ 7, 14). The agency issued a final decision on March 3, 2022, and Plaintiffs subsequently brought the issue to this Court. However, the claims Plaintiffs assert here are ones of fraudulent misrepresentation, administrative errors, flawed investigation, and negligence. Plaintiffs are *not* asking this Court to

---

[11] Plaintiffs reference two other claims submitted to the USDA in 2010 and 2012. (R. Doc. 1 at ¶ 18). Those are not the subject of the current complaint, and nonetheless would be clearly time barred.

review the discrimination claim,[12] but rather are making a *new* claim regarding the accuracy of the agency's investigation and the agency's alleged negligence leading to Plaintiffs' disqualification from farm loan programs. Plaintiffs have not presented these **specific claims** to the agency prior to filing with this Court, thus they have not exhausted their administrative remedies for **these tort claims**, and this Court does not have jurisdiction. *Price v. United States*, 69 F.3d 46, 54 (5th Cir. 1995) ("subject matter jurisdiction of the court is conditioned upon compliance with 28 U.S.C. § 2675(a)"). Therefore, Plaintiffs' claims **should be dismissed**.

Finally, we turn to Plaintiffs' discrimination claim. As discussed above, Plaintiffs have **not** properly brought their OASCR discrimination claim before this Court for review; nevertheless, the Court addresses the timing of such a claim. The agency's Final Decision denying the discrimination claim was delivered to Plaintiffs on September 16, 2023, at the latest. (R. Doc. 33-1 at 11). Under the FTCA, a tort claim is "forever barred," unless a plaintiff files suit in district court within six months after the federal agency renders a final denial of the claim. *Ramirez v. United States*, 410 F. Supp. 3d 824, 834 (S.D. Tex. 2019) (quoting 28 U.S.C. § 2401(b)). Because the final agency decision on Plaintiffs' claim was delivered by certified mail on September 16, 2023, they needed to have filed that claim in federal court by March 18, 2024.[13] If the discrimination claim had been asserted in the instant Complaint, it would have been dismissed as time-barred; and it is now forever barred as untimely.

Plaintiffs argue that the two-year prescription period under the FTCA applies. But that period is the limit for presenting the initial claim to the relevant agency. In order to sue the United

---

[12] Not only have Plaintiffs not asserted a discrimination claim in the instant Complaint, but they have not provided to the Court any of the voluminous evidence provided to the agency in support of that claim. (*See* R. Doc. 1 at ¶¶ 13, 18, indicating thousands of pages of evidence).

[13] That is, six months after delivery by certified mail on September 16, 2023—March 16, 2024 fell on a Saturday, and so the six-month period continued to run until the end of Monday, March 18, 2024. (*See* Fed. R. Civ. P. 6(a)(1)).

States for a FTCA claim, a plaintiff must present, in writing, a claim to the appropriate federal agency **no more than two years** after the event giving rise to the claim occurred. 28 U.S.C. § 2401(b). Plaintiffs further argue that the six-month period to file with federal court indicates a *minimum* time to file rather than a maximum. Plaintiffs are almost right—there is a six-month minimum before filing with federal court *if the agency does not issue a Final Decision*. When a plaintiff presents a claim to an agency, the agency has six months to issue a decision—if no decision is issued, the claim is deemed denied by default, and at that time the plaintiff has the right to bring the claim to federal court. But *if the agency does issue a final decision*, the plaintiff must bring the claim to federal court within six months. That is, "federal tort claimants **may** initiate suit in federal court at any point after six-month agency inaction [but] they **must** file within six months of agency denial". *Ellison v. United States*, 531 F.3d 359, 363 (6th Cir. 2008) (emphasis original).

IV. **CONCLUSION**

For the reasons discussed above, all of Plaintiffs' claims are either time-barred or asserted against improper defendants under the cited statutes. As such, the undersigned **RECOMMENDS** that Defendants' Motions to Dismiss (R. Docs. 21, 29, and 33) be **GRANTED** and Plaintiffs' claims **DISMISSED WITH PREJUDICE**.

Signed in Baton Rouge, Louisiana, on February 28, 2025.

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**